First case this morning is case number 417-0257 in re W.M. and for the appellant of Joel Wessel for the affidavit of McNeil. Are you ready to proceed Mr. Wessel? Please do so. May it please the court. Counsel, my name is Joel Wessel. I am with the office of the state appellate offender and I represent W.M. in this matter. W.M. had no concerned adult. Not only in this case, but in his life. His father was incarcerated, his mother in Chicago who he had not seen or been in contact with for two years. He told the court services officer that he had no family that he could depend upon. And that was certainly evidenced by the record here where no one showed up for any of his proceedings. Not his parents, not another adult or guardian. The lack of anyone at W.M.'s hearings, trial and sentencing undermined the protections of the Juvenile Court Act which contemplate a concerned adult present and active in the proceedings. The act charges a concerned adult with the assessment, with helping to assist in the assessment and treatment of the minor. To help the respondent recognize and accept responsibility. And if the court orders, the parent, guardian or legal custodian must help promote public safety. By helping the minor develop competency and accountability to help change his or her ways. And the importance of a concerned adult is also evidenced in the notice provision. Where the state is required to notify parents of delinquency proceedings against their child or guardian. In order to help ensure that there is someone present who has the minor's or the respondent's best interest in mind. So the notice provisions were complied with, is that correct? Yes, they were. Both parents were notified. Is there anything in the Juvenile Court Act that requires the parents to appear? Nothing that requires the parent to appear. But the act, your honor, has repeated concerns regarding having an adult who is responsible for the best interest of the child present. And are there provisions in the act that require the court to appoint a guardian item in the absence of the appearance of any parent? The statute says that a court may appoint a GAL if it's in the best interest of the minor or the respondent. But looking to the cases I cited in my opening brief, the abuse and neglect cases, the marriage dissolution cases, in those cases the statutes have similar discretionary language. But in those circumstances when there is not a concerned adult present, the trial court has a sui sponte duty to appoint a guardian item to help ensure that the minor's best interests are being looked after. But you agree that's not the court's obligation in these cases? No, there is no case on point regarding that. And the minor was represented by counsel, which I realize that's not the same as a parent, but the minor was represented by counsel? Yes. And, Your Honor, regarding that, in In Re Austen Em, the Illinois Supreme Court talked about how defense counsel is often in opposition to the role of a guardian item. The role of defense counsel is express representation. And the role of a GAL is best interest representation. There are likely numerous situations where, A, an attorney would not be able to request a GAL, or ask that one be appointed, for fear that it would go against his client's express interest or the confidentiality of those communications. And here, the trial court at the beginning of every proceeding noted that there was no one there for the minor. He listed off several people. He never noted that there was anyone who was looking after WM's best interest. At that point, the trial court should have appointed a guardian ed item. A GAL is charged with meeting with the minor, assessing the circumstances, and determining what procedures and dispositions are in the best interest of the minor. The GAL then reports to the parties and the court. And in this case, a GAL could very well have impacted the proceedings. The state charged a habitual juvenile criminal, which required that once adjudicated, WM would spend until he was the age of 21 incarcerated in IDJJ. It's quite possible that a GAL, in meeting with WM, would have determined that mandatory incarceration was not the appropriate disposition, and possibly have convinced the state to change its charging instrument to make a period of incarceration not mandatory. This court has explicitly recognized the importance, the vital importance, of a concerned adult in delinquency proceedings. In Marcus W., this court reversed on the analogous issue of failure to provide parental notice. This court expressly referenced how important... But the statute requires notice. It does. Isn't that different? I mean, you're citing that case, saying that we reversed because of lack of notice, but the statute requires notice, and the statute here does not require the appointment of a guardian ed item. In reversing in Marcus W., for lack of notice, this court discussed at length the importance that a concerned adult plays in these delinquency proceedings, whose only loyalty and concern is to the juvenile respondent. This court did reverse for lack of notice, but it placed heavy emphasis on the fact that, in that case, Marcus W. had no one advocating for his best interests. In looking to the other aspects of the Juvenile Court Act regarding abuse and neglected marriage dissolution cases, there is discretionary language in that statute, too, and appellate courts have held that it is incumbent upon the trial court to appoint a GL when no one is representing the minor's best interests. This would not be a burden on the trial court. In doing research for this issue in this case, I came upon only one case, and that was Marcus W., where the respondent had no concerned adult present. In many of the other cases, that was reversed for lack of notice, another parent was present, etc., but both parents were not noticed. Marcus W. is the only case that I have found where the minor or the respondent did not have anyone representing his best interests. It would only be in the rare occurrence where a GL would need to be appointed. And, Your Honor, Justice Holder-White, regarding your question regarding the statute, there is also a provision in the Juvenile Court Act which requires that the provisions of the Juvenile Court Act be liberally construed in a spirit of humane concern for everyone involved, including the respondent. And here, with such an emphasis placed on having a concerned adult, and where W.M. had no one advocating for him in his best interests, it was incumbent upon the trial court to appoint someone that would have only had his best interests in mind. So it's your position that due to the fact that it's to be construed liberally, the court was obligated to appoint a guardian ad litem, even though the statute does not require that? That, in conjunction with the abuse and neglect cases and the marriage dissolution cases, where that already is required. I mean, isn't that proof that the legislature didn't intend to include that? They know how to include it, and they included it in some statutes, but did not in this one? Well, I don't remember if it's the marriage dissolution or the neglect and abuse statute, but none of those statutes has as equally discretionary language as the statute here. And appellate courts have held that in those situations where the best interest of the respondent was not represented, that a GAO was necessary to ensure that the respondent's best interests were represented. Well, I believe for abuse and neglect, you have to have a guardian ad litem in every case. I've served as the guardian ad litem in Macon County, and so I think that's required, and it's discretionary with the Marriage and Dissolution of Marriage Act. And so here, given that it's discretionary, I don't understand. I'm trying to follow your logic as to why you believe the trial court was required. Your Honor, it's because of the repeated references in the Juvenile Court Act and the importance placed on having someone who has the minor's or the respondent's best interests in mind. And unless in these rare situations where there is not someone there and not someone available that a GAO is appointed, then chunks of the Juvenile Court Act are not being fulfilled. We don't have anyone advocating for WM. He was essentially abandoned and left to fend for himself. Well, counsel, your arguments for having a concerned adult present are pretty persuasive, but it would take a very simple amendment from the General Assembly to add that to the statute, wouldn't it? And isn't that where this argument should be made? The argument that you're advancing today, I mean. Your Honor, I believe it would also not take much time for the trial court in the beginning to just view the courtroom, determine if there is anyone present. And if not, then just appoint a GAO. I believe both situations would require little time, likely, either the legislature or the court. But since the legislature has not acted and the Juvenile Court Act is full of references to making sure that all minors and respondents have a concerned adult, that someone should be present and made available. It would not be a burden on the court whatsoever. I fully understand what you're saying. However, several times in your argument you've said the trial court was obligated to appoint a GAO. But the fact is, the court wasn't obligated pursuant to the statute to appoint a concerned adult present. That's where I'm having a problem with your argument. I think Justice Holden White has expressed the same concern. And I do understand. But in order to reconcile the discretionary part of the statute with the need for a concerned adult when a minor has no one else, the only resolution is to ensure that the trial court be required to appoint a GAO in these rare situations. Does this court have any questions regarding this argument or argument? No? If nothing else, Your Honors, then I would just ask that this court reverse order a new trial. Well, I'd like you to talk about the video. Okay. Your position on that. That's something that you also raised in your brief about the prior inconsistent statement and your position that we did not have the necessary foundation for that? Yes. In People v. Grayson, Your Honor, this court explicitly detailed how the state must lay a foundation for the admission of a prior inconsistent statement. While the witness is on the witness stand, the state must ask very specific questions in order to later have those prior statements that the state deems to be inconsistent admitted into evidence. And here's my concern, my question. So does the state have to confront the witness with the precise statement that was made? I mean, we've got a video here which I think is, what, two hours or something like that? Yes. And so do they have to confront the witness with everything allegedly said during the interview before they can offer the interview to prove the prior inconsistent statement? Or can they discuss it generally? How does that work? Well, the problem here is that it was discussed way too generally. The state talked about an incident at an undisclosed location. The prejudice that WM suffered by having the evidence admitted of Shondell Wright's prior inconsistent statement was that in that recorded interview, Shondell Wright said that WM got into the vehicle of Mr. Mackey, put his phone against Mr. Mackey's neck, acting like it was a gun, told Mr. Mackey that, and none of that was presented to Shondell Wright on the witness stand. And this court in Grayson talked about the policy reasons behind requiring that, which is to give the witness and defense counsel an opportunity to possibly explain away those inconsistencies. As I noted in my brief, it's possible that Shondell Wright, if he had been presented with his statements, especially the one where he said that WM put his phone against the back of Mr. Mackey's neck, about 20 minutes prior, it was the detective who first suggested, did WM put his phone against Mr. Mackey's neck? If he had been presented with that statement on the stand and been given an opportunity to explain away his inconsistencies, that may very well have been one of his reasons that this answer was suggested to me. According to Grayson, it undermines the fundamental fairness of the defense to allow these sorts of statements in without properly laying the foundation to give the witness an opportunity to explain his side of things. Because if he could adequately explain, yes, I made that statement, but here is why I made that statement, not only do you have an explanation as to the inconsistencies, but that vital piece of evidence would not have been admitted. And that recorded statement was what the prosecutor extensively relied on in its closing. Repeated references to that, and that was a factor that the court used in adjudicating WM. So it seems to be your position that the witness has to be confronted with the precise statement, and so the state would then, what, redact the video as necessary to demonstrate the inconsistent statement? Or if there are really very important statements here that the state obviously wanted to get across, which was that WM was there, WM got into the car, he put his phone against the neck. At the very minimum, those statements should have been asked on the witness stand. I'm not sure about every other extraneous detail that might not have impacted WM. Well, when the witness simply says, I don't remember anything, why would the state need to go much further than that? Because in this case, the statements to the questions of the witness were so general that it's possible that a more specific statement may have jogged the witness's memory. And that those inconsistent statements, and they were inconsistent, the lapses of memory, where they were only inconsistent as to the very, very general questions that Shondell Wright was asked. He was asked about an incident at an undisclosed location, and that he may have seen, that he saw WM that day. There was nothing about a vehicle, nothing about Mr. Mackey, nothing about the phone against the base of his neck. And without that, and if this court follows Grayson, it should reverse and order a new trial because the foundation was not, the proper foundation was not laid for the admission of that two-hour prejudicial video. And so basically, you're relying on this portion of Grayson that talks about the importance of giving the opposing party an opportunity to explain the inconsistency if he can. Yes. If this court has no further questions, I would simply ask that this court reverse for argument one and argument two, and if this court reverses due to the lack of a guardian and litem, that if no concerned adult is present at the new trial, that the court is ordered to appoint a GAO. Thank you. Thank you, counsel. You will have rebuttal if you want it. Mr. McNeil. May it please the court, counsel. As for the first issue, the guardian and litem issue, it is forfeited. Respondent concedes that a mention of GAO at any point in the proceedings below didn't happen. Respondent nor counsel ever asked for a parent or a concerned adult to be present at any point in the proceedings below. There were never any objections by counsel or any specific mention of appointing a GAO by any party below. So it's clearly forfeited. Respondent concedes that but argues it's plain error. The plain language of the statute applicable here gives the court discretion in appointing a GAO in situations like this, so there was no error at all, clearly not plain error. The applicable language of Section 5-6101 states, quote, the court may appoint a GAO for the minor whenever it finds that it is otherwise in the minor's interest to do so. The main thrust of Section 6101, I would submit, is conflict of interest, which is, I would probably presume why it's more likely that in merit of dissolution cases, a GAO must be appointed because the possibility of conflict of interest is clearly greater in those cases. In a criminal case, it's hard to imagine what inconsistent principles or interests a GAO would have from the point of view of counsel in this case. In this case, specifically, it's a bad one to first hold that the may in this statute, which is, of course, the cardinal rule of statutory construction, that may means the legislature intended this section to be permissive. The opposite would be mandatory, and that word is, of course, shall. To make this may a shall, to say up is down in this particular case, the fact base of this case in particular is a bad one to do that with, and again, it would be the first case to so hold. Respondent was 18 and 19 years old during these proceedings. He had an extensive criminal history. This wasn't a scared child thrown into the courtroom for the first time. This was an 18 and 19-year-old, basically an adult, who had been in criminal juvenile courtrooms multiple times in the past, had been to IDJJ three times in the past. There was no conflict of interest in this case, which again was the main thrust of Section 610.1. There's not even an argument that there was a conflict of interest here. And two, any of this would have been on the court's own motion. There was no indication by any party that a GAL was even wanted or needed in this case. So this case in particular is a bad one to hold that the actual discretionary the court may appoint a GAL actually means that the court must appoint a GAL. Clearly that this doesn't rise to the level of plain error if no error occurred at all. As for Respondent's argument about his father being there, the father was incarcerated. There's no statutory authority that requires the court to order an incarcerated parent to attend their child's criminal juvenile proceedings. There's simply no statutory authority to require that. And again, this would have been on the court's own motion. There was no evidence. I mean, this again is a particularly bad case because Respondent had no relationship with his father at all. The father was incarcerated for most of the Respondent's life. And it's unclear whether Respondent would have even wanted a man that he doesn't know to even show up in court and sit behind him when he's facing an armed robbery charge. So clearly that wasn't an abuse of discretion for the trial court to fail on its own motion to order without any statutory authority an incarcerated parent to the proceedings. As for the video recording of the prior inconsistent statement, again this is the high standard abuse of discretion. The trial court in this case specifically found that the witness' statements were inconsistent with his trial testimony. His recorded video was inconsistent with his trial testimony. Mr. McNeil, it seems to me this is the most difficult part of the appeal for you to overcome. You seem to argue that as soon as a question is asked that calls for the defendant to either acknowledge the interview took place or it didn't. If the defendant says he can't recall or denies the interview took place, at that point everything can come in under the statute, under 115-10.1, as substantive evidence. If the officer or defendant was asked, do you remember being interviewed about the incident on June 21, 2015, and he said no, would that have been enough to admit the entire two-hour interview as substantive evidence? I mean there's scales to everything. Luckily we have a lot more than that in this case. But you don't have specific questions that opposing counsel has identified in his reply brief that were critical to this case, the elements of proof for the prosecution. We have, if I may say, we have specific questions of whether this guy was even at the gas station where the armed robbery took place. But does that establish the crime occurred and that he committed the crime? Then we have the question, did you see Respondent that day? He said no, it's not even possible that I saw Respondent that day. I mean it seems absurd to make the state then ask questions about what Respondent did that day. If he already stated he didn't see Respondent that day. Let's go back to the general principle in regards to this statutory provision that allows for the admission as substantive evidence. Statements such as this where the defendant either denies having made the statements or can't recall them. Case law indicates that the process is to be the same as establishing the foundation where you're wanting to impeach the witness, right? Correct. Okay. So it's pretty fundamental when it comes to impeachment that you have to confront the witness with the prior inconsistent statement. When you look at the case law, Grayson says it, People v. Brothers says it, People v. Lewis. All sorts of cases out there that indicate that you have to first establish from the witness that either he denies having made that specific statement or has no recollection of having made that specific statement. And it has to go down the line, specific statement after specific statement. You can't just ask a question, you know, do you recall giving an interview and in response the defendant says no and you get a two-hour interview being admitted as substantive evidence. So do you have a case that says you don't have to confront the witness with each specific statement in order to have it admitted as substantive evidence? I don't have a case specifically on a point like that, but there's no case that says the opposite of that. Grayson is a star contrast to this case. Like you said, in this case, if we were to take what Grayson did, it would be the state asking Mr. Wright, did you give this interview? Is that you in the interview? And he says yes and that's it. First of all, that's not even an inconsistent statement. That's what happened in Grayson. They wanted to get a 911, audio of a 911 call. They asked him two questions. Did you make a 911 call? Is this your voice on the 911 call? Well, Grayson was about the fact that the individual that they were trying to get the inconsistent statement in against indicated that, well, I don't know that my nose was broken during this altercation. And they were trying to get in the fact that he had told the police that his brother broke his nose. So there was a definite inconsistent statement. The foundational requirements were lacking in Grayson. They only asked him those two questions. He didn't even state any inconsistency. Well, Grayson goes on to say that part of the necessary foundation is asking the witness whether he made the inconsistent statement. So my question to you is, in this case, was the witness confronted with the inconsistent statement, the alleged inconsistent statement? Yes. How so in response to what was outlined in the reply brief? He stated he didn't go to the, he was asked if he went to that gas station that day. He said he didn't go anywhere. He stated, did he get interviewed by this detective? He said no. He gets shown the video, finally admits he was interviewed. But then he doesn't remember any of the questions. But the inconsistent statements. He didn't see a respondent that day. And it was not even possible that he saw a respondent that day. That is, and he didn't remember the armed robbery at all. Those are inconsistent enough to establish that this was, I mean, the only, it was a two-hour video, but the only applicable part of this video is when he's talking about respondent at the gas station committing the armed robbery. In the video, did he admit that the defendant in this case held the phone to the neck of the individual in the vehicle? Did he suggest that? Yes. Was he confronted with the question of, did you, were you asked whether or not the defendant held the phone to the neck of the victim? Was he asked that question? He said he didn't see him at all before that. No, no, no. No, he didn't. Was he asked that question? No. I think it would be superfluous to require that question to be asked. Well, counsel, I mean, I don't know if you're familiar with Grayson, but. Yes, I'm very, I'm, that, like I said, the equivalent of Grayson in this case is to not ask any other foundational questions. Well, it seems like you're ignoring everything else that Grayson contains in terms of what's required. Grayson in dicta suggests the, lays out the ideal way to lay a foundation for section 115-10.1. However, ideal, attorneys don't have to be ideal. This attorney laid, asked repeated questions that established that this guy didn't remember, imagine a lot, didn't remember anything about this interview or about this robbery incident. Clearly, these were prior inconsistent statements. And most importantly, it wasn't an abuse of discretion for the trial court to so find that these were inconsistent statements. I think it belongs in the Department of Redundancy Department to make him ask questions regarding what respondent did that day when he stated it wasn't even possible he saw a respondent that day. Well, I think it goes beyond dicta. You have a reference to people v. Sneed, people v. Edwards, people v. Halbeck, all in Grayson, standing for the proposition that when you're trying to lay the foundation for a prior inconsistent statement as substantive evidence that you basically have to lay the same foundation as an inconsistent statement as indicated by Justice Harris earlier. So, I guess we'll have to agree to disagree. People v. Flores, the foundational Supreme Court case, Illinois Supreme Court case, states that when a witness now claims to be unable to recollect the matter, a former affirmation of it should be admitted as a contradiction. This witness clearly was unable to recollect anything about this interview, unable to recollect anything about the incident which he was a co-defendant on, the armed robbery, unable to recollect seeing a respondent at all that day. And most importantly, the trial court specifically found that these were inconsistent statements. They were in the best position to review this witness's testimony, and it wasn't an abuse of discretion for the trial court to so find. At what point was the two-hour video admitted into evidence? After all of these foundational questions by the State. Was the witness still on the stand? No, I think it was at the close. So, there was no witness on the stand, State had completed its case in chief, and prior to resting offered the two-hour video into evidence? I think, or it could have been after redirect of this witness. But the witness was off the stand, is that right? Yes, it was though. So, I mean, just reading again from people v. Grayson here, it says, a key aspect to establishing the foundation for the admissibility of a prior inconsistent statement is the need to confront the witness while on the witness stand with that statement. It goes on to say, one of the important reasons for the requirement that a witness be confronted with this allegedly prior inconsistent statement while still on the witness stand is to provide the opposing party with the opportunity to ask the witness to explain or clarify the inconsistent statement. And in Grayson, it said, when a witness is not confronted with his prior inconsistent statement, as occurred here when Jesse was not confronted with the statement he made in the recording of his 911 call, the opposing party is deprived of the opportunity to ask the witness to explain the inconsistency if he can. Here, in this case, you'll acknowledge that there was no witness on the stand, no opportunity to explain any inconsistency. Those foundational questions had already been asked. There was an opportunity to cross-examine on those. Why didn't you remember seeing respondent that day? Why didn't you remember? Those questions could have been asked on cross-examination of this witness. That's what Grayson's getting at. In Grayson, there were only two questions asked, and then later they moved to admit this video, and there was no opportunity to even – they didn't even talk about the contents of the 911 call in Grayson. So it's your position then it would be the allegation of defense counsel to give the witness the opportunity to explain the inconsistency? No, the defense counsel already had the opportunity to explain the inconsistency. It hadn't been played yet. It hadn't been offered. No, but his denial of what he said in the video was already before the court and direct examination. But isn't the state the one who is required to say, didn't you say when you were interviewed by the police that the defendant placed his cell phone to the neck of the victim? That's not a question from defense counsel. That's a question from the state when they're confronting the witness with the alleged inconsistent statement. I would submit that Section 115-10.1 doesn't require that further questioning of – if he says he doesn't remember this video, this interview, says he doesn't remember seeing Respondent at all that day, what's the point of asking superfluous questions about what Respondent did that day? Because he might be confused about the day. Let's just say the question is asked of a witness. Do you recall giving a statement on October the 10th, 2014? And the witness says no. Under your theory, then everything that followed in that interview could come in as substantive evidence. Even though the witness is thinking it wasn't October the 10th, it was actually October the 5th. So he could explain that statement if he was still on the witness stand. If he was confronted with the specific questions, that would jog his memory. Oh, so that was actually on October the 10th. Okay, I now recall that that was the correct date. Yes, I recall giving that interview. I would argue it's not my theory. That's Grayson. There needs to be more than just denying this, that the interview took place. Luckily, in this case, there was more than that. He talked about the specifics of where he went that day, that he didn't go anywhere, didn't remember going anywhere. Talked about the specifics of did you see Respondent that day? No, I didn't. It's not possible I could have seen Respondent that day. No, I don't remember an incident that happened at the gas station. I mean, that is enough to enter a prior inconsistent statement specifically about Respondent doing an armed robbery at the gas station. It seems to me, and I agree with you, that this case doesn't involve just simply a denial or a general statement that I don't recall giving the interview. There were additional questions that would make it seem more implausible that this fellow would come around and acknowledge having given that interview at a later point. But I don't see anything in the case law that says that there is this hybrid type case that relieves the proponent of the evidence from establishing a foundation through each and every specific question or statement in order to have it offered as evidence. And I would argue that Section 115-10.1 does not require a specific denial of each question of a recorded interview. It does talk about confronting the witness with the statement. It does give an idea of the situation. No, no, I'm talking about the statute. What does the statute say? It talks about the witness is subject to cross-examination concerning the statement. Inconsistent with his testimony at the hearing or trial. Witness's prior testimony does not have to directly contradict testimony given at trial to be considered inconsistent. Within the meaning of that term set out in Section 115-10.1. That's Flores, which I also cited. No, I'm talking about the fact that the statute directs that the witness must be subject to cross-examination concerning the alleged inconsistent statement. And he was. He was subject to cross-examination regarding his inability to recollect seeing respondent that day, going to the gas station, or giving an interview. I think it has to relate to the statement you're offering as inconsistent. Anything you want to offer that's inconsistent, the witness must be confronted with that statement. He was confronted by the fact that he didn't see respondent that day. Also in Grayson, this Court did affirm based on harmless error. And I would agree that that should happen in this case as well. Okay. Thank you, Counsel. Any rebuttals? Just a few brief points, Your Honors. The State repeatedly cites the Flores. Flores just states the rule of what is an inconsistent statement. The question in this case is, what was the inconsistent statement in response to? And here the State just didn't go far enough. Its questions were too general. It would not be burdensome for the State to simply ask a few more specific questions to make sure that the witness, while he's on the stand, is confronted with those inconsistencies. As to Argument 1, the State talks about forfeiture. In this situation, where defense counsel's role is opposed to that of a GAL and may be in conflict, forfeiture should be relaxed. It's quite possible that by asking for a GAL, that defense counsel would be violating some sort of confidential nature between he and his client. On the issue of prior inconsistent statements, Mr. McNeil concluded by saying, even if that was harmless error, why isn't it harmless error here? Respondent had been identified by the victim as one of the individuals in the car. Regarding that, that identification was also suggestive. The witness in that case had been brought down to the police station and shown a video a few days after. He was told, this is the Quick and Easy gas station, where it happened, pick out who these people were. He was not given a lineup. He was not given a photo array. Because of that, this identification was certainly tainted by the fact that he was told, this is where it happened, this is when, pick out the people involved. If you look at Shondell Wright's, and you're honest, that's probably why the State did not rely on Mr. Mackey's identification during closing argument. Instead, it almost exclusively relied on Shondell Wright's recorded interview, repeated references to his discussion about how WM was there. Got into the car, put his phone to the back of Mr. Mackey's neck, and said, give me all of your stuff. According to Grayson, that just did not go far enough. If you look to the influence that statement had on the adjudication, it cannot be said that it was harmless. In fact, it had quite a role in the court's decision to adjudicate WM. When you say the victim was shown the video from the Quick and Easy, what was the video? A video of this actually occurring, or a video of the young men entering the store? It was, I believe, just a video of the young men at the gas station on the day in question. Okay. There was no evidence that I'm aware of that was put into the record. The offense was not captured on video? No. Okay. Thank you, Your Honors. Thank you. Thanks to both of you. The case is admitted. The court stands in recess.